UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSEPH CACERES,                                    Civil Action No. CV-06-1558

                        Plaintiff,           **DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

                      -against-

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, et al.,
                      Defendants.
----------------------------------------------------------------X

      WALTER SIGNORELLI hereby declares under 28 USC 1746:

      1.    I am a retired member of the New York City Police Department (NYPD), having served for more than (31) thirty-one years. During my tenure, I held the ranks of Police Officer, Sergeant, Lieutenant, Captain, Deputy Inspector, and Inspector, and served in numerous capacities, including patrol officer, patrol sergeant, anti-crime sergeant, lieutenant tour commander, Executive Captain of the 46th Precinct, Bronx; Commanding Officer, Manhattan North Public Morals Division; Commanding Officer of the 79th Precinct in Brooklyn; Commanding Officer, Staff Services Section of the Personnel Bureau; Commanding Officer, 24th Precinct in Manhattan; Executive Officer, Bronx Narcotics Division; Commanding Officer, License Division; Executive Officer, Narcotics Division; Executive Officer, Manhattan North Narcotics Initiative; and Executive Officer, Brooklyn South Detective Division.

      2.    During my tenure, I conducted or supervised thousands of police investigations and arrests. At various points in my career, I was assigned to executive

positions in the Patrol Bureau, Organized Crime Control Bureau, Narcotics Division, the Legal Bureau, and the Detective Bureau. All of the foregoing positions entailed training and supervision responsibilities regarding police investigations and arrests.

3.   Since my retirement from NYPD, I have taught police science and criminal law courses at John Jay College of Criminal Justice and St. John's University, including courses in police administration, criminal investigations, and criminal law. I have been retained as a consultant by both plaintiffs and defense in a number of police liability cases, and have testified as a police procedures expert in both State and Federal courts.

4.   I make this affidavit to summarize my findings regarding an incident that occurred on August 4, 2004 at the Port Authority's police facility on the New Jersey side of the George Washington Bridge in which the plaintiff, Joseph Caceres, was arrested by Port Authority police on the basis of a New York City Criminal Court bench warrant that named "John Doe" as the defendant.

5.   I have reviewed the record and documents provided, including:
   a. Defendants' Local Civl Rule 56.1 statement of facts
   b. Port Authority Officer Affidavits in Support of Motion for Summary Judgment
   c. "John Doe" bench warrant
   d. Fax from Lieutenant Sangiorgi to NYPD ICU (8/6/04)
   e. NCIC printout (including rap sheet)
   f. Hit confirmation
   g. Lydon memo
   h. Port Authority procedures on warrant checks
   i. Caceres mug shot pedigree form
   j. Lacey Johnson mug shot pedigree form
   k. Repository Inquiry (8/6/04)
   l. Criminal complaint report
   m. Second Amended Complaint
   n. Joseph Caceres Deposition
   o. Michael Barry Deposition

      p. Michael Lydon Depostion
      q. Jason Malice Deposition
      r. Roenzo Sangiorgi Deposition

6. Based on my review of the above stated materials, my experience, training, education, and professional background, and in the exercise of my professional judgment and expertise, it is my opinion within a reasonable degree of professional certainty that members of the Port Authority Police Department (PAPD) violated proper and accepted police practices and procedures when they arrested Joseph Caceres on the basis of a felony bench warrant while failing to take the necessary and required actions to ensure that Mr. Caceres was, in fact, the person wanted on the bench warrant.

7. My review of the above material reveals that Caceres, a male Hispanic, entered the Port Authority police facility to retrieve his automobile that had been impounded. The police conducted a driver's license name and date of birth check of Caceres, and they learned through a computerized response that an alleged outstanding bench warrant from Bronx Criminal Court existed for Caceres.

8. According to the police testimony, when informed of the warrant, Caceres stated only that "It's not me" and he had never been arrested in the Bronx. (Sangiorgi: 160:20-25). On the contrary, Caceres testified that he told the police that he had never been arrested in the Bronx, the warrant was a case of mistaken identity, the mistake had occurred twice before, and the person actually wanted on the warrant was Lacey Johnson, a male black with a different date of birth. (Caceres: 100:18-25).

9. Irrespective of the above disputed facts as to what Caceres told the police, the police were aware of several discrepancies regarding the warrant, particularly between Caceres' pedigree and the pedigree information associated with the person

wanted on the warrant. First, the bench warrant was issued for "John Doe." This should have raised a red flag that the warrant was problematic. Unidentified defendants are carried as John Doe, but courts do not release unidentified persons charged with felonies on bail or personal recognizance; therefore, a bench warrant could not ordinarily be issued for a John Doe. Second, the warrant was for a male black; Caceres is a male Hispanic. Third, John Doe was listed as 5'8" and 160 lbs.; Caceres' drivers license listed him as 5'7" and 142 lbs. Fourth, John Doe's date of birth was September 25, 1981; Caceres date of birth is September 11, 1976. Nevertheless, the police arrested and charged Caceres as a fugitive from New York State, and he was incarcerated without bail.

10. When the National Crime Information Center (NCIC), provides warrant information, it includes a disclaimer that the requesting agency should contact the originating agency to confirm the information and obtain photographs. Mistaken identities in the criminal justice process are not uncommon. Police officers should be aware that errors occur when information is inputted into computerized databases, and inaccurate information in one database is often transferred into other databases. For example, incorrect information in the NYSID database is transferred into FBI databases. Therefore, when discrepancies exist between the records used to match a suspect to a warrant or when extrinsic information casts doubt on the accuracy of the computerized records, police officers must take further measures to confirm that a suspect is actually the person wanted.

11. In this case, on August 4, 2004, in addition to requesting from NYPD the records associated with Caceres arrest on Staten Island, the PAPD officers should have requested records pertaining to the Bronx arrest that was the subject of the warrant. If

they had, the pedigree and mug shot would have shown that a male black, Lacey Johnson, was the person wanted on the warrant. Were the officers unable to obtain the Bronx records via telephone or computer inquiries, they should have sent officers to the NYPD to obtain records and a mug shot of the Bronx defendant.

12. In fact, on August 6, 2004, after the plaintiff's father, who was a Corrections Officer, appeared at the PAPD facilities and advised the officers of the prior instances of mistaken identification, the officers expeditiously obtained a mug shot of Lacey Johnson by requesting records through the NYPD Inter-City Correspondence Unit and by visiting an NYPD precinct. With these records, they obtained the release of the plaintiff from the county jail. In my opinion, the officers were required to do on August 4, 2004 what they did on August 6, 2004.

13. The police testimony and affidavits indicated a lack of knowledge regarding law enforcement information systems, the distinct possibilities of errors in the systems, and how to confirm information. Several of the officers appear to have simply discounted the plaintiff's story as just another criminal claiming innocence. (Sangiorgi, 88:4-11). This lack of knowledge and the lack of responsibility to confirm disputed information indicate a lack of training and supervision by the management of PAPD.

14. Regarding the alleged strip-search, if Caceres was strip-searched by the police, such a search would have been a violation of accepted and proper police practices and procedures in that strip-searches should only be conducted on the basis of probable cause that contraband or dangerous items have been secreted on a defendant's person. No information in the records indicates any such basis.

15. In my opinion, the failures of the PAPD officers to ascertain that Caceres was not the person wanted on the bench warrant were violations of accepted and proper police practices and procedures that led to the unwarranted arrest and detention of the plaintiff.

Dated: Yorktown Heights, N.Y.
June 16, 2008

_____
WALTER SIGNORELLI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSEPH CACERES,

                    Plaintiff,

    -against-

THE PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, POLICE OFFICER J. MALICE (Shield No. 2442),
POLICE OFFICER M. LYDON (Shield No. 1585), SERGEANT
K. COTRELL (Shield No. 304), POLICE OFFICER MICHAEL
BARRY (Shield No. 1810), POLICE LIEUTENANT ROENZO
SANGIORGI (Shield No. 166), POLICE OFFICER A. PINIELLO
(Shield No. 1856), POLICE OFFICER TRUGLIO (Shield No.
2105), individually and in their official capacities,

                  Defendant.
------------------------------------------------------------------------X

06 CV 1558
(JGK)(KNF)

## DECLARATION OF WALTER SIGNORELLI

LEVENTHAL & KLEIN, LLP
Attorneys for Joseph Caceres
45 Main Street, Suite 230
Brooklyn, New York 11201
(718) 722-4100